UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. MILLER,

      Plaintiff                          Civil Action No. 15-12567
v.                                 HON. ROBERT H. CLELAND
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert L. Miller brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Dock. #21] be GRANTED and that Plaintiff's motion for summary judgment [Dock. #16] be DENIED.

## I.  PROCEDURAL HISTORY

On August 28, 2012, Plaintiff filed an application for DIB, alleging disability as of October 30, 2009[1] (Tr.138).  After the initial denial of the claim, Plaintiff requested an

_____

[1]

The Administrative Law Judge ("ALJ") noted that Plaintiff made a prior application for

administrative hearing, held on October 30, 2013 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy Christensen (Tr. 43). Plaintiff, represented by attorney Frank Cusmano, testified (Tr. 46-48, 52-69), as did Plaintiff's wife (Tr. 48-52), and Vocational Expert ("VE") Kelly Stroker (Tr. 70-73). On February 20, 2014, ALJ Christensen found that Plaintiff was not disabled through the date last insured of December 31, 2011 (Tr. 28-38). On April 14, 2015, the Appeals Council denied review (Tr. 6-11). Plaintiff filed for judicial review of the final decision on July 20, 2015.

## II. BACKGROUND FACTS

Plaintiff, born September 18, 1976, was 37 when the ALJ issued his decision (Tr.38, 138). He completed eighth grade and worked in construction from 1998 to 2011 (Tr. 167). He alleges disability due to a pituitary gland malfunction, diabetes, limb pain, and a back tumor (Tr. 166).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

He left school after eighth grade and had limited reading and writing skills (Tr. 46-47). He had not worked since 2006 and did not hold a share in his wife's construction company (Tr. 47).

---

benefits on August 30, 2011 and had not challenged an October, 31, 2011 non-disability finding (Tr. 28). The ALJ nonetheless considered records created on or before October 31, 2011 despite the fact that a finding of disability for that period was barred by *res judicata* (Tr. 28).

-2-

Arm swelling, radiating back pain, and concentrational problems prevented Plaintiff from working (Tr. 52). He also experienced diabetes, low testosterone due to a pituitary gland tumor, and Carpal Tunnel Syndrome ("CTS") (Tr. 53). His arm swelling was attributable to arthritis which was exacerbated by diabetes (Tr. 53). The back pain radiated into his legs, causing numbness, tingling, and twitching (Tr. 54). The low testosterone levels caused fatigue and lack of muscle tone (Tr. 55-56). CTS caused gripping problems (Tr. 56). He took MS Contin, Norco, and Tramadol for body pain (Tr. 58-59).

Body pain restricted Plaintiff to sitting for 15 minutes at a time and standing for 20 (Tr. 59). He was unable to walk for more than a city block before requiring a rest (Tr. 59). He was unable to lift more than five pounds on a frequent basis (Tr. 60). He experienced limitations in bending, crouching, crawling, and kneeling (Tr. 60). Leg pain caused sleep disturbances (Tr. 60). Pain and fatigue required him to recline four to five times each day (Tr. 60-61). His most comfortable position was reclining on his side (Tr. 61). His activities included helping his son with his homework, watching television, and taking his dog for a walk (Tr. 61). In addition to the above-reported conditions, Plaintiff experienced headaches twice a day (Tr. 62). He coped with the headaches by wrapping a cold dish towel around his head (Tr. 62). He had not performed any "physical work" since 2008 or 2009 (Tr. 63).

### B. Testimony by Plaintiff's Wife

Plaintiff's wife, Tracy Miller, offered the following testimony:

Ms. Miller and Plaintiff previously owned a construction company in which Plaintiff

-3-

and she held 40 percent and 60 percent shares respectively (Tr. 50).  Plaintiff's income after 2006 was attributable to unfinished construction projects completed by other individuals (Tr. 49).  Ms. Miller later started a second contruction company (Tr. 50).  Plaintiff did not hold a share in or work for the current company (Tr. 50-52).

Ms. Miller reported that Plaintiff had not performed "physical work" since 2009 (Tr. 64-65).  She testified that he was unable to work due to back problems (Tr. 65).  Plaintiff's headaches were attributable to the pituitary condition (Tr. 66).  Plaintiff was unable to perform less strenuous work due to his inability to fill out an application or sustain the physical demands of an eight-hour work day (Tr. 67-68).  In addition to the physical conditions, Plaintiff experienced concentrational problems (Tr. 68-69).

## C.  Medical Evidence[2]

### 1. Treating Sources

#### a.  Evidence Predating the December 31, 2011 Expiration of Benefits

October, 2009 testing showed low testosterone levels (Tr. 226, 229).  October, 2010 imaging studies of the cervical spine were unremarkable (Tr. 287, 435).  A January, 2011 MRI of the brain and pituitary gland was unremarkable (Tr. 265).  February, 2011 records note a diagnosis of diabetes "with neurological manifestations, hypertension, a pituitary disorder, low testosterone, and rheumatoid factors (Tr. 230).  Plaintiff reported fatigue and

---

[2]Evidence postdating the December 31, 2011 expiration of benefits is included where relevant to Plaintiff's arguments for remand.

foot tingling, numbness, and pain (Tr. 231).  Plaintiff denied spine tenderness (Tr. 231).  April and July, 2011 treating notes state that Plaintiff did not experience diabetic neuropathy (Tr. 233, 387, 420).  Treating notes state that he was compliant with treatment (Tr. 233).  The following month, imaging studies of the lumbar and cervical spine were unremarkable (Tr. 238-240, 325-326, 414-415).

July, 2011 treating records state that Plaintiff sought treatment for diabetic neuropathy of the arms, legs, feet, and back (Tr. 244).  He reported fatigue, night sweats, chronic lower extremity pain and spasms (Tr. 244, 296, 298).  Plaintiff appeared fully oriented with fluent speech, good comprehension, and good immediate, recent, and remote memory (Tr. 246).  Nerve conduction studies showed C7 and L4-5, S1 radiculopathy (Tr. 248, 258, 381).  An MRI of the cervical spine showed a hydrosyrinx at C4-5[3] (Tr. 249, 254, 259, 288, 436).  An MRI of the lumbar spine showed only mild degenerative changes (Tr. 251, 261, 290).  An MRI of the thoracic spine was essentially unremarkable (Tr. 256, 270, 383, 443).  The following month, an MRI of the cervical spine showed the hydrosyrinx at C4-5 but no other abnormalities (Tr. 269, 327, 441).  Plaintiff, 6' 2" and 291 pounds, reported back and bilateral calf pain (Tr. 274).  He reported that he worked "in construction" (Tr. 274).  He demonstrated level "4" out of 5 strength in the lower extremities (Tr. 275).

---

[3]Syringomyelia "is the development of a fluid-filled cyst (syrinx) within the spinal cord.  http://www.mayoclinic. org/diseases-conditions/syringomyelia /basics/symptoms/con-20034245 (last visited July 18, 2016).  Symptoms may include neck, arm, leg, and back pain and stiffness. *Id.*

Kim Pratt, M.D. recommended epidural steroid injections (Tr. 271, 385). She referred to the cervical hydrosyrinx as "small" and noted the unremarkable MRI of the lumbar spine (Tr. 272). She found that Plaintiff did not require "neurosurgical intervention" and that blood work for connective tissue diseases and rheumatoid arthritis was "essentially negative" (Tr. 273-274). In September, 2011, Plaintiff sought treatment for bilateral leg swelling (Tr. 293).

### b. Records Created After the December 31, 2011 Expiration of Benefits

January and February, 2012 treating records state that glucose levels improved after dietary and medication changes (Tr. 373-374, 368). Plaintiff reported back pain but denied joint swelling, knee pain, leg pain stiffness, swelling arthralgia, or CTS (Tr. 368). In March, 2012, Louis E. Rentz, D.O. performed a neurological examination, noting Plaintiff's report of back pain and muscle cramping (Tr. 314). Dr. Rentz noted that the spinal MRIs and previous nerve conduction studies were essentially normal and that Plaintiff had "massively developed upper and lower extremity muscles (Tr. 314, 466). Dr. Rentz noted no muscle spasms (Tr. 314). The same month, Sami E. Asmar, M.D. noted Plaintiff's report that he was "unable to take Vicodin at work" (Tr. 365). Plaintiff reported continued fatigue and "no ambition" (Tr. 363). Dr. Rentz noted that the endocrine studies showed "significant laboratory abnormalities" (Tr. 314). An MRI of the brain showed a "mildly irregular area" of an "otherwise normal appearing pituitary gland" (Tr. 316,329). Vascular testing ordered by Dr. Asmar was unremarkable (Tr. 376). An ultrasound of the thyroid gland was also unremarkable (Tr. 371). The following month, Boyd F. Richards, D.O. noted Plaintiff's

report of headaches, memory problems, and neck, back, and lower extremity pain (Tr. 321).

Dr. Richards noted diminished upper and lower extremity reflexes (Tr. 323). Dr. Asmar's

notes state that Plaintiff fell off a ladder the same month (Tr. 361). In June, 2012, Plaintiff

reported worsening headaches as well as numbness and tingling in all extremities (Tr. 319).

Plaintiff reported "severe headaches" during sexual activity (Tr. 356). He denied leg pain

(Tr. 356). Later the same month, he reported headaches with nausea (Tr. 353). Records from

the last week of June, 2012 note joint swelling and stiffness "mainly in the morning" (Tr.

348). August, 2012 records note fluctuating glucose levels (Tr. 337). Dr. Asmar's October,

2012 records state that Plaintiff's glucose levels were under "excellent control" (Tr. 330).

Plaintiff denied headaches (Tr. 330).

A December, 2012 MRI of the brain and pituitary gland was unremarkable (Tr. 463,

638). The same month, Plaintiff denied headaches and leg pain (Tr. 630). January, 2013

MRIs of the lumbar and cervical spine were unremarkable (Tr. 458-459). Dr. Asmar noted

that Plaintiff presented with a "weakened hand grasp" (Tr. 615). February, 2013 EMG

studies of the upper extremities showed "minimal" bilateral CTS (Tr. 452). February, 2013

testing for autoimmune disorders was negative (Tr. 597). Dr. Asmar's records from the next

month note that Plaintiff "presented with arthritis" (Tr. 584). Plaintiff reported that he was

managing his body pain with marijuana (Tr. 584). In April, 2013, Plaintiff reported

"worsening" knee pain (Tr. 607). Dr. Asmar's June and July, 2013 records noted good

muscle strength and tone with no atrophy (Tr. 499-500, 503, 507). October, 2013 records

-7-

note that Plaintiff, a pack-a-day smoker, had developed Chronic Obstructive Pulmonary Disease ("COPD") (Tr. 517). Dr. Asmar remarked that Plaintiff's "onset of [] generalized body pain" had been "gradual" (Tr. 516).

The same month, Dr Asmar completed a Residual Functional Capacity Questionnaire, noting diagnoses of rheumatoid arthritis and diabetes mellitus with symptoms of small joint and back pain; swollen joints; and fatigue (Tr. 657). Dr. Asmar found that Plaintiff was unable to grip and would be off task for at least 25 percent of the workday due to pain and concentrational problems (Tr. 658). He found Plaintiff incapable of even low stress jobs (Tr. 658). He found that Plaintiff was unable to sit for more than 15 minutes at a time or stand for more than 10 (Tr. 658). He found that Plaintiff was unable to sit, stand, or walk for even two hours in an eight-hour work day and would require work allowing for a sit/stand option (Tr. 659). He found that Plaintiff was limited by depression (Tr. 658). He noted that Plaintiff's condition was stable (Tr. 657). Dr. Asmar found that Plaintiff was limited to lifting less than 10 pounds on a rare basis and moving his neck on an occasional basis (Tr. 659). He limited Plaintiff to occasional postural activities (Tr. 660).

## 2.  Consultative and Non-Examining Sources

In October, 2012, Quan Nygyen, M.D. performed a non-examining Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for a total of six hours in an eight-hour workday; and push and pull without limitation (Tr. 88-89). Dr. Nygyen found that

Plaintiff was limited to occasional climbing of ladders, ropes, or scaffolds but could climb stairs/ramps, balance, stoop, kneel, crouch, and crawl on a frequent basis (Tr. 89). He found further that Plaintiff was limited to occasional bilateral overhead reaching (Tr. 89).

In November, 2013, Matthew Tommack, D.O. performed a consultative examination at the request of ALJ Christensen (Tr. 661-674). He noted Plaintiff's report of lower extremity pain, numbness, weakness, and recent muscle spasms (Tr. 662). Plaintiff reported that he had been diagnosed with bilateral CTS in the previous year and used splints at night (Tr. 663). He reported "some neuropathic pain" in the lower extremities and occasional migraine headaches (Tr. 663). Dr. Tommack noted "mild difficulty" getting on and off the examining table (Tr. 664). He noted full grip and pincher strength and a full range of spinal motion (Tr. 664).

Dr. Tommack found that Plaintiff could lift up to 10 pounds on an occasional basis and could stand for two hours in an eight-hour work day and sit or walk for three (Tr. 667-668). He found that Plaintiff could finger/feel on an occasional basis; reach, handle, and push/pull frequently; and use foot controls occasionally (Tr. 669). He precluded all climbing of ladders or scaffolds but found that Plaintiff could balance frequently and stoop, kneel, crouch, and crawl occasionally (Tr. 670). He precluded work involving unprotected heights but found that Plaintiff could work occasionally with moving mechanical parts, motor vehicles, dust, fumes, temperature extremes, and vibration (Tr. 671). Dr. Tommack declined to state that his findings referred to Plaintiff's condition at an earlier time (Tr. 672).

### D.   Vocational Expert Testimony

VE Kelly Stroker classified Plaintiff's former work as a construction worker (roofer) as skilled and exertionally medium (heavy as performed)[4] (Tr. 70).  The ALJ then described a hypothetical individual of Plaintiff's age, education, and work history:

> This individual is limited to light, unskilled work; would require a sit/stand option at will but by exercising that option would not be off task; could perform postural activities occasionally and only work overhead occasionally with the upper extremities.  Could that individual do any of Mr. Miller's past work ?(Tr. 70).

The VE stated that the above limitations would preclude  Plaintiff's past work but would allow for the light/unskilled work of an assembler (90,000 positions in the national economy); inspector (60,000); and packager (60,000) (Tr. 71).  The VE found that if the same individual were limited to sedentary work, he could perform the work of a sedentary inspector (40,000); assembler (60,000); and surveillance monitor (60,000) (Tr. 71).  The VE found that if the same individual were required to take a 20-minute break every hour due to pain and concentrational problems stemming from physical conditions, all work would be precluded (Tr. 71-72).  The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that her testimony regarding

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the "sit/stand" option was based on her own professional experience (Tr. 72).

In response to questioning by Plaintiff's attorney, the VE testified that the need to be off task for 15 percent or more of the work period; take unscheduled breaks; or, miss work (unscheduled) more than once a month would preclude all work (Tr. 72-73).

### E. The ALJ's Decision

The ALJ noted that an earlier unsuccessful application for benefits was denied on October 31, 2011 (Tr. 28). The ALJ stated that while he was barred from making a finding of disability before that date, he considered all of the medical evidence created from the alleged onset date of October 30, 2009 through the date last insured of December 31, 2011 (Tr. 28, 31).

Citing the medical transcript, ALJ Christensen found that for the period pre-dating the December 31, 2011 expiration of benefits, Plaintiff experienced the severe impairments of "mild degenerative disc disease of the cervical and lumbar spine, radiculopathy, diabetes mellitus, benign brain tumor, syringomyelia, and obesity" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 31). He found that prior to the expiration of benefits, the conditions of low testosterone, benign hypertension, headaches, and CTS were non-severe (Tr. 31). The ALJ found that through December, 31 2011, Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following limitations:

> [C]laimant required a sit/stand option, at will, but by [exercising] that option, [would] not have been off-task. He could have performed postural activities

occasionally, and work overhead with the upper extremities only occasionally (Tr. 32).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of his past relevant work, he could perform the jobs of sedentary inspector, assembler, and surveillance monitor (Tr. 36-37).

The ALJ discounted Plaintiff's allegations of disability. He noted that imaging studies of the cervical spine showed only mild degenerative changes (Tr. 33). He noted that an MRI of the thoracic spine was unremarkable and that most of the neurological examinations were normal (Tr. 33). The ALJ observed that Plaintiff had declined to take Lyrica (Tr. 33). He cited the consultative examination records showing normal grip and pincher strength (Tr. 33). The ALJ noted that Plaintiff could make small meals, peel potatoes, help his son with homework, perform household chores, drive, and walk the dog (Tr. 34). He found that the RFC accounted for Plaintiff's allegations of fatigue resulting from the pituitary condition (Tr. 34). The ALJ noted that the condition of obesity did not prevent Plaintiff from performing sedentary work (Tr. 34). He found that Plaintiff's tobacco use slightly undermined the claims of back pain (Tr. 35). The ALJ discounted Dr. Asmar's October, 2013 assessment on the basis that it post-dated the expiration of benefits by almost two years and was inconsistent with the treating records (Tr. 36). The ALJ found that the testimony of Plaintiff's wife was inconsistent with "the preponderance of the opinions and observations by medical doctors in this case" (Tr. 35).

-12-

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

-13-

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The RFC

Plaintiff argues first his hand and foot limitations resulting from diabetic neuropathy were improperly omitted from the RFC.  *Plaintiff's Brief* at 8-11, *Docket #16.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must

consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

Substantial evidence supports the RFC crafted by the ALJ (Tr. 32).  First, the ALJ acknowledged the professed limitations resulting from diabetic neuropathy (Tr. 33). However, the ALJ noted that a number of examinations predating the December, 2011 expiration of benefits were unremarkable (Tr. 33).  My own review of the the records also indicates that Plaintiff denied diabetic neuropathy on multiple occasions during the relevant period (Tr. 233, 387, 420).  While Plaintiff complained of tingling of the arms, legs, and feet in July, 2011 (Tr. 244), the symptoms coincided with a spike in glucose levels.  As noted by the ALJ, Plaintiff's blood sugars were reduced by September, 2011 (Tr. 34).  The ALJ noted that although Plaintiff was prescribed Lyrica, he declined to take it[5]   (Tr. 33).   Plaintiff's contention that neuropathy significantly impacted his work abilities is also undermined by Dr. Rentz's March, 2012 observation that Plaintiff had "massively developed upper and lower extremity muscles" (Tr. 314, 466).   While Plaintiff alleged disability as of October, 2009, August, 2011 treating notes state that Plaintiff "worked in construction" and in March, 2012, Plaintiff's reported to a treating physician that he was "unable to take Vicodin at work" (Tr. 274, 365).  Plaintiff's April, 2012 report that he fell off a ladder ( presumably requiring gripping the rungs of the ladder to attempt ladder-climbing) also stands at odds with his argument that he experienced significant manipulative limitations prior to December, 2011

---

[5]

Lyrica is commonly prescribed to address symptoms of diabetic neuropathy.  http://www.webmd.com/drugs/2/drug-93965/lyrica-oral/details.  (Last visited July 19, 2016).

(Tr. 361).  Because the ALJ's exclusion of manipulative limitations from the RFC is well supported by the record, a remand on this basis in not warranted.

## B. Credibility

In his second argument, Plaintiff takes issue with the ALJ's conclusion that the allegations of limitation were not credible. *Plaintiff's Brief* at 11-19.  Plaintiff argues that his allegations of pain are confirmed by the diagnoses of radiculopathy and neuropathy.  *Id.* at 12.  He contends that the record is "riddled" with accounts of "numbness, tingling, and pain to [the] bilateral extremities." *Id.*  He argues that none of his physicians found that he was malingering or questioned the severity of the pain.  *Id.* at 13.  Plaintiff faults the ALJ for rejecting the claims of limitation on the basis that the treatment had been exclusively conservative, arguing, in effect, that "non-conservative" options were not available.  *Id.* at 15.  Plaintiff also faults the ALJ for rejecting the professed limitations in daily living because they could not be verified.  *Id.* at 16-18 (*citing* Tr. 35).  Finally, Plaintiff argues that the ALJ erred in finding that continued tobacco use undermined the allegations of limitation.  *Id.* at 18-19.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.[6]  "First, the adjudicator must consider whether there is an underlying

---

[6]

In March, 2016, SSR 16-3p superceded SSR 96-7p.  The newer Ruling eliminates the use of the term "credibility" from SSA policy.  SSR 16-3p, 2016 WL 1119029,  *1 (Mar. 16, 2016).  The Ruling states that "subjective symptom evaluation is not an examination of an individual's character."  Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation."  *See* 20 C.F.R. § 404.1529(c)(3), fn 7, below.

-16-

medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [7]

Plaintiff's argument that the ALJ failed to comply with the procedural or substantive requirements of SSR 96-7p is without merit. Substantial evidence created during the relevant period and in the months following the expiration of benefits easily supports the non-disability finding. The ALJ noted that evidence created during the relevant period suggested

---

Nonetheless, SSR 96-7p applies to the present determination, decided on February 20, 2014. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[7]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

intermittent rather than chronic limitations (Tr. 33-35). He observed that the imaging studies showed mild findings (Tr. 33). The ALJ noted that while EMG testing showed evidence of radiculopathy, physical and neurological examinations were mostly normal (Tr. 33). As noted above, Plaintiff's argument that he experienced constant "numbness, tingling, and pain" stands at odds with treating records stating that he denied neuropathic symptoms (Tr. 33, 233, 387, 420). Treating records created in the two months after the expiration of benefits state that Plaintiff reported back pain but denied joint swelling, knee pain, leg pain, stiffness, swelling, arthralgia, or CTS (Tr. 368).

To be sure, Plaintiff is correct that none of the treating or examining sources stated that he was "malingering." *Plaintiff's Brief* at 12. However, the ALJ reasonably observed that Dr. Rentz's March, 2012 observation of "massively developed upper and lower extremity muscles" (Tr. 35, 314, 466) stood at odds with Plaintiff's claim that he was unable to perform sedentary work as of December 31, 2011. Again, Plaintiff's July, 2011 report that he worked "in construction" (Tr. 274) and March, 2012 report that he was "unable to take Vicodin at work" (Tr. 365) also undermine the claim of disability as of October 30, 2009 (Tr. 138).

Plaintiff also faults the ALJ for rejecting the claims of limitation on the basis that the treatment had been exclusively conservative, arguing that "non-conservative" options were not available for the conditions of back problems and diabetes. *Id.* at 15 (*citing* Tr. 33). However, the ALJ did not err in concluding that Plaintiff's conditions were "stabilized" with

-18-

"routine and conservative treatment" (Tr. 33). The ALJ observed that August, 2011 imaging studies showed that the hydrosyrinx was stable (Tr. 33). He noted that the exclusively conservative treatment (steroid injections) for the back condition was consistent with the imaging studies showing only mild abnormalities (Tr. 33). Notably, none of the treating sources recommended surgery for the back condition (Tr. 273-274). The ALJ also cited later studies showing full grip strength (Tr. 33). As to the condition of diabetes, the ALJ noted that Plaintiff's glucose levels were successfully lowered with medication changes (Tr. 34). While Plaintiff complained intermittently of neuropathy during the relevant period, the treating records do not show that he experienced the diabetes-related complications of retinopathy or organ damage. As such, the ALJ did not err in noting that Plaintiff's exclusively conservative care undermined the claim of disability.

Plaintiff also argues that the ALJ improperly discounted the allegations of disability on the basis that the "daily activities cannot be objectively verified." *Plaintiff's Brief* at 15-16 (*citing* Tr. 35). In fact, the ALJ considered Plaintiff's allegations of limitation but found that the claims were "outweighed by other factors" including "the relatively weak medical evidence," including the physical examination showing "massively developed" muscles (Tr. 35). The ALJ also noted that the RFC for sedentary work accounted for Plaintiff's allegations of fatigue (Tr. 34).

Finally, the ALJ did not err in discounting Plaintiff's allegations based on his continued tobacco use. *Plaintiff's Brief* at 18-19. Plaintiff notes that none of the treating

sources stated that smoking exacerbated the back condition. *Id.* However, the ALJ did not err in finding that the continued smoking undermined the disability claim (Tr. 35). The ALJ found that Plaintiff's smoking "despite having disc disease and other problems weighs *slightly* against the credibility of his allegations and certainly does not help his condition" (Tr. 35). The ALJ did not claim that any of Plaintiff's treating sources had stated that smoking exacerbated the disc disease, but noted "a body of evidence that suggests that cigarette smoking contributes to disc disease" (Tr. 35)(*citing Hericks v. Astrue*, 2012 WL 161105, *5 (S.D. Ohio January 19, 2012); *Greenemay v. Astrue,* 2011 WL 3876307, *1 (W.D. Mo. August 30, 2011). Dr. Asmar's 2013 treating notes showing that Plaintiff was diagnosed with COPD after the expiration of benefits regrettably supports the ALJ's finding that smoking, at a minimum, "certainly does not help" Plaintiff's condition (Tr. 35, 517).

### C. Testimony by Plaintiff's Wife

Plaintiff argues that his wife's testimony was improperly discounted. He faults the ALJ for discounting the testimony on the basis that she "could not be considered a disinterested third party." *Plaintiff's Brief* at 19 (*citing* Tr. 35).

The ALJ addressed Tracy Miller's testimony that Plaintiff could not perform computer-related work due to concentration and memory problems (Tr. 67-69):

> In considering her opinion, I considered the probative value thereof pursuant to SSR 06-3p. By virtue of her relationship as the wife of the claimant, she cannot be considered a disinterested third party whose opinion would not tend to be colored by affection . . . and a natural tendency to agree with the symptoms and limitations [he] alleges. Most importantly, significant weight cannot be given to her opinion because it is not consistent with the

preponderance of the opinions and observations by medical doctors in this case (Tr. 35).

SSR 06–3p directs that the ALJ must consider evidence from "other sources" such as family members whose observations may be helpful in developing an assessment of a claimant's limitations. 2006 WL 2329939, *6 (2006); 20 C.F.R. § 404.1513(d)(4).   In weighing such opinions, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-3p at *6.   "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996) ((citation omitted)).   "While the ALJ discounts the mother's statement because it is a lay opinion, this reasoning could be improperly used to discount statements by any family member." *Miller v. Comm'r of Soc. Sec.,*  2014 WL 5511952, *8-9 (E.D. Mich. Oct. 31, 2014)(ALJ erred by rejecting otherwise well-supported family member's account as biased).

In contrast to *Miller* where the family member's testimony was consistent with the medical record, ALJ Christensen correctly noted that "the preponderance of opinions and observations by medical doctors" contradicted Tracy Miller's testimony.   To be sure, the ALJ finding that the wife's testimony was "colored by affection" (Tr. 35), is an insufficient

-21-

basis to reject her statements. However, the ALJ made clear that bias was not the primary reason for the rejection, stating that "[m]ost importantly," he discounted the testimony because it was contradicted by the majority of medical records. While Ms. Miller testified, in effect, that Plaintiff's poor concentration and memory rendered him disabled, the treating records for the relevant period note the absence of cognitive or mental limitations (Tr. 246). The ALJ's discussion of Ms. Miller's testimony is directly preceeded by citation to March, 2012 records showing that Plaintiff experienced normal concentrational and memory skills (Tr. 35, 214-216).

Plaintiff's contention that Ms. Miller's testimony is consistent with Dr. Asmar's October, 2013 opinion is a red herring. As the ALJ noted, the treating opinion post-dates the expiration of benefits by almost two years (Tr. 36). While Dr. Asmar's opinion found that Plaintiff experienced disabling limitations in concentration, the medical records created during the relevant period and for at least a year following the expiration of benefits make no mention of concentrational problems.

Because ALJ's rejection of Ms. Miller's testimony is based, at a minimum, on substantial evidence, it does not provide a basis for remand. "The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them in full." *Shelton v. Colvin*, 2015 WL 5569024, *17 (W.D. Okla. Aug. 24, 2015); 06-3p at *6, *report and recommendation adopted*, 2015 WL 5579803 (W.D. Okla. Sept. 22, 2015).

### D.  The Evaluation of the Medical Evidence

Plaintiff faults the ALJ for discounting Dr. Asmar's October, 2013 finding of disabling limitations.  *Plaintiff's Brief* at 22-23.  He also contends that the ALJ erred by rejecting Dr. Tommack's finding of manipulative and environmental restriction and instead, according greater weight to Dr. Nygyen's earlier non-examining findings.  *Id.* at 23-25.

It is well established that the opinion of a treating physician is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson,* 378 F.3d 541, 544 (6th Cir. 2004)).   An ALJ is required to provide "good reasons" for declining to accord controlling weight to a treating opinion.  *Wilson* at 544; 20 C.F.R. 1427(c)(2).

The ALJ did not err in according "little weight" to Dr. Asmar's October, 2013 opinion on the basis that it was composed almost two years after the expiration of benefits (Tr. 36).  Generally, "evidence of disability obtained after the expiration of insured status is generally of little probative value," *Strong v. Comm'r of Soc. Sec.*, 88 Fed.Appx. 841, 845 (6th Cir. February 3, 2004).  For example, Dr. Asmar's finding of concentrational problems, depression, and the inability to perform even "low stress work" stands at odds with records created during the relevant period showing no psychological or cognitive limitation (Tr. 658).

-23-

"[A] treating physician's opinion rendered after the DLI 'may be considered to the extent it illuminates Plaintiff's health before the expiration of her insured status,'" *Stark v. Comm'r of Soc. Sec.,* 2016 WL 1077100, *6 (N.D. Ohio Mar. 18, 2016)(*citing Nagle v. Comm'r of Soc. Sec.,* 191 F.3d 452, 1999 WL 777355, *1 (6th Cir. September 21, 1999))(unpublished)(punctuation omitted); *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988). Dr. Asmar's treating records do not support the finding that Plaintiff experienced disability level restrictions prior to the end of 2011. October, 2013 treating records stating that Plaintiff's "onset of [] generalized body pain" had been "gradual," and post-expiration diagnoses of CTS and COPD suggest that the October, 2013 assessment reflected a greater degree of limitation than experienced by Plaintiff as of the date last insured (Tr. 516).

Plaintiff's contention that the ALJ was required to recontact Dr. Asmar for clarification as to whether the assessment applied to the medical conditions prior to December, 31, 2011 is without merit. Instead, "after weighing the evidence," the ALJ *may* seek "additional evidence or clarification" if s/he "cannot reach a conclusion about whether" the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1)(emphasis added). "[A]n Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. December 15, 2006); § 404.1512(e). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.,* 2008 WL 828861, *4 (W.D.Mich. March 26, 2008) (*citing Johnson v.*

-24-

*Barnhart,* 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005). As such, the ALJ's finding that Dr. Asmar's assessment did not reflect Plaintiff's condition prior to the expiration of benefits should not be disturbed.[8]

Likewise, the ALJ's rejection of Dr. Tommack's November, 2013 consultative findings because they post-dated the expiration of benefits by almost two years does not provide grounds for remand. Plaintiff argues in effect that Dr. Tommack's findings should be applied to the relevant period, pointing out that Dr. Tommack was provided records predating the expiration of benefits. *Plaintiff's Brief* at 23. However, Plaintiff ignores that Dr. Tommack explicitly declined to find that his assessment applied to a period other than the date of the examination (Tr. 672). Plaintiff claims that an ALJ "needs to call upon a ME when he 'has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time.'" *Plaintiff's Brief* at 23 (citing SSA Hearings, Appeals & Litigation Law Manual ("HALLEX") § I-2-5-34). However, the portion of HALLEX cited by Plaintiff is discretionary, stating that the ALJ "may need" to consult a ME if required to determine if and when a claimant became disabled. https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html (Last visited July 21,

---

[8]

Plaintiff also takes issue with the ALJ's finding that Dr. Asmar's assessment is contradicted by wholly "routine and conservative treatment." *Plaintiff's Brief* at 22 (*citing* Tr. 36). However, the ALJ was actually referring to "the routine and conservative nature of [Plaintiff's] treatment *through the date last insured*" (Tr. 36)(emphasis added). As discussed in Section **B.,** the ALJ did not err in noting that Plaintiff's conditions were addressed with exclusively conservative treatment through the expiration of benefits.

2016).  Because the records predating the expiration of benefits generously support a non-disability finding, the ALJ did not err in declining to consult an ME.  For the same reasons, while a treating source's opinion is generally entitled to controlling weight, the ALJ did not err in adopting Dr. Nygyen's October, 2012 non-examining findings over the later findings by Drs. Asmar and Tommack.  *Wilson v. Halter*, 23 F. App'x 341, 341 42 (6th Cir. October 25, 2001)(*accord Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530 (6th Cir.1997)).

The ALJ's determination that Plaintiff was capable of a significant range of unskilled sedentary work as of December 31, 2011 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Dock. #21] be GRANTED and that Plaintiff's motion for summary judgment [Dock. #16] be DENIED.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2016

CERTIFICATE OF SERVICE

I hereby certify on July 21, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants July 21, 2016.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen

-27-
